## TEAGUE INDEPENDENT SCHOOL DIST. v. FIRST STATE BANK OF TEAGUE et al. (No. 8427.)

(Court of Civil Appeals of Texas. Dallas. March 11, 1922. Rehearing Denied May 27, 1922.)

1. **Depositaries** ⬚13 — **School district not bound by acceptance and approval of depository's bond to which depository had forged names of some of sureties.**

School district was not bound by acceptance and approval of bond furnished by depository of its funds to which the depository had forged the names of some of the sureties, as far as liability of successor to depository and its sureties was concerned, since acceptance and approval of the bond was induced by the fraud of the depository, and was based on a mistake of fact, and sureties actually signing bond of first depository were not liable.

2. **Depositaries** ⬚13—**Sureties on depository's bond to which depository had forged names of some of the sureties held not liable.**

Where school district's depository forged the names of some of the sureties on its bond, and the depository was not legally authorized to act as such, the sureties were not liable notwithstanding the district's acceptance and approval of the bond, since such acceptance and approval was induced by the fraud of the depository and was based upon a mistake of fact.

3. **Depositaries** ⬚10—**Depository not estopped from denying possession of certain deposits by reason of cashier's statement as to amount on deposit, where school district was not led to act to its prejudice by reason thereof.**

Where bank designated as depository of school district's funds made secret arrangement with former depository giving former depository time for payment of funds to the newly designated depository, the statement of the cashier of the newly designated depository as to the amount of the district's funds on deposit did not estop the depository from denying that it had such funds on deposit, where the district did not change its position or suffer any loss on account of, and was not prejudiced by reason of, such misrepresentation.

4. **Depositaries** ⬚10, 13—**Secret arrangement between new depository and retiring depository did not discharge retiring depository and its sureties as to missing funds unless payment made to new depository.**

Secret arrangement between newly designated depository and retiring depository of school district giving the retiring depository time in which to deposit funds with the new depository did not discharge the retiring depository or its sureties from responsibility to the district for missing funds, unless such secret arrangement in effect constituted payment of the funds to the new depository, and did not provide that the old depository and its bondsmen should be held therefor.

5. **Depositaries** ⬚10, 13—**Secret arrangement between old and new depositories giving old depository time in which to deposit missing funds with new depository held to make new depository and sureties liable therefor.**

Secret arrangement between newly designated depository of school district and retiring depository, giving retiring depository time for deposit of funds with the new depository, held to make the new depository and its sureties liable for missing funds never deposited with it by the retiring depository, though no express contract was made between the new and the old depositories, and that the new depository would so become responsible, since, as between the new depository and the old depository, the arrangement was equivalent to the actual payment by the old to the new depository of the missing funds, and the immediate and contemporaneous loan of such funds by the new depository to the old depository, even if the district had knowledge of the secret arrangement, and notwithstanding that the amount involved was in excess of the sum the depository could lawfully loan to a single customer.

---

⬚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Banks and banking ☞101—Bank may compel borrower to repay excess loan according to its terms.**

A bank may make a loan in excess of the amount which it can lawfully loan to a single customer, and may compel the borrower to repay it according to its terms, since the penalty for the illegal act does not destroy the loan itself.

**7. Bankruptcy ☞363—School district by proving and accepting dividends on bankruptcy of retiring depository is not estopped from proceeding against new depository on secret arrangement between the new and old depositories.**

Where newly designated depository of school district made secret arrangement with retiring depository giving the latter time in which to deposit funds, the school district by proving up claim in bankruptcy against the retiring depository for amount of missing funds and accepting and retaining dividends was not estopped from proceeding against the newly designated depository.

Appeal from District Court, Freestone County; A. M. Blackman, Judge.

Suit by the Teague Independent School District against the First State Bank of Teague and others. From judgment denying plaintiff relief as to the named and some of the unnamed defendants, the plaintiff appeals. Reversed and remanded in part, and affirmed in part.

Boyd & Bell, of Teague, and J. N. Gallagher, of Austin, for appellant.

Williford & Geppert and W. E. Doyle, all of Teague, C. S. Bradley, of Groesbeck, R. M. Edwards, of Fairfield, and Richard Mays and R. E. Prince, both of Corsicana, for appellees.

BAKER, Special Judge. This suit was brought by Teague independent school district to recover approximately $30,000 of its school funds. The defendants consisted of certain official depositories of the funds, the sureties upon their several bonds, certain banks with whom portions of the funds were at one time deposited, and the administratrix of one of the bondsmen, who had died and whose estate was in process of administration.

The existence of the trust funds, that they had been placed with the depositories in due course, that they had been in part redeposited by the depositories with the other banks which were sued, and that they had not been accounted for, was alleged and such allegations are not substantially disputed. The successive depositories and the successive groups of sureties upon the depository bonds deny their responsibility for the loss. The other banks allege that the funds which were deposited with them were not tagged as trust funds, but were simply deposits, subject to check, made by the depositors in the usual course of business, that they had been regularly checked out in the usual course of business, and that they are not responsible for them to the school district. It appeared that one of the depositories, Brazos Valley Investment Company, had become bankrupt, and accordingly its trustee in bankruptcy was joined as defendant. At one time the surviving widow, children, and heirs of the deceased bondsman were made defendants, but, when his administratrix was made party, the court dismissed the widow, children, and heirs from the suit, and no complaint is made here of that order.

The case was submitted to the jury upon special issues. Upon the return of verdict the trial court rendered judgment that plaintiff recover from the bankrupt depository, Brazos Valley Investment Company, and its trustee in bankruptcy, S. E. Stratton, and that as to all of the other defendants plaintiff take nothing. From that judgment the school district has appealed to this court.

The transcript, the statement of facts, and the special issues which were submitted to the jury are quite voluminous, but much of the record is not vital to the principles upon which in our opinion the appeal must be decided. The facts which are deemed essential will be set out in the opinion.

Teague independent school district, for the scholastic year beginning September 1, 1914, and ending August 31, 1915, designated Brazos Valley Investment Company the legal depository of the school funds of the district. On November 7, 1914, the investment company tendered, and the school district approved, its bond as such depository. The bond was in the sum of $20,000 and was conditioned as required by law. The sureties thereon were J. R. Bell, J. R. Chumney, E. B. St. Clair, and J. P. Ham. J. P. Ham is the deceased surety who is mentioned in the outset of this opinion, and whose estate is represented in this suit by Mrs. Allie Ham, administratrix. The parties to this suit call this bond the Ham bond.

Shortly after August 31, 1915, Teague independent school district again designated the investment company as depository. The new designation was for the scholastic year beginning September 1, 1915, and ending August 31, 1916. On or about November 8, 1915, the investment company tendered its bond for the new term. It appeared to be signed by E. J. Headlee, J. R. Bell, H. F. Gunter, J. R. Chumney, John F. Wallace, and W. L. Meier as sureties. In fact, the signatures of J. R. Bell, H. F. Gunter, John F. Wallace, and W. L. Meier were forged. The forgeries were not disclosed to the school district, however, until after the various transactions took place upon which the rights of the parties to this suit were fixed. The

school district, in ignorance of the forgeries, approved the bond and transmitted it, as was customary, to the department of education at Austin. In a short time the department returned the bond to the school district, stating that, under a ruling of the Attorney General, Brazos Valley Investment Company could not legally qualify as depository of the school funds, it not being incorporated as a bank or trust company, but simply as an ordinary investment corporation. The school district then surrendered the bond to the investment company and informed it as to the ruling made by the Attorney General. The investment company acquiesced and accepted the surrender of the bond. This bond has been lost, and the parties to this suit refer to it as the lost bond.

The school district then called for new bids, and. in due course designated the First State Bank of Teague as depository (in place of the investment company) for the scholastic year beginning September 1, 1915, and ending August 31, 1916. On or about December 30, 1915, the bank tendered, and the district approved, its bond as such depository for the term mentioned. The bond was in the sum of $60,000, and was conditioned as required by law. The sureties thereon were J. R. Chumney, H. F. Gunter, R. W. Smith, J. D. Maupin, W. L. Meier, and E. J. Headlee.

Shortly after August 31, 1916, the school district again designated the First State Bank of Teague as depository. The new designation covered the scholastic year beginning September 1, 1916, and ending August 31, 1917. The bank tendered, and the district approved, a new bond of the depository for the new term. It was conditioned as required by law. The sureties thereon were J. R. Chumney, Howard F. Hunter, J. D. Maupin, R. W. Smith, and E. J. Headlee.

Shortly after August 31, 1917, the school district against designated the First State Bank of Teague as depository. The new designation was for the scholastic year beginning September 1, 1917, and ending August 31, 1918. The bank tendered, and the district approved, a new bond of the depository for the new term. The bond was conditioned as required by law. The sureties thereon were R. M. Thompson, J. D. Maupin, R. W. Smith, J. A. Thompson, and A. J. McKinney.

The school funds which have not been accounted for came into the hands of the investment company as depository for such funds during the scholastic year beginning September 1, 1914, and ending August 31, 1915—the period covered by the Ham bond. The amount of the shortage, with interest to October 6, 1919, is fixed in the judgment in this case at $31,055.33. No question is raised here as to the correctness of this amount.

When the First State Bank of Teague be-

came depository of the school funds belonging to the school district, it entered into an agreement with the retiring depository, the investment company, whereby it gave time to the investment company in which to pay over to the bank, as school district depository, the balance of the school funds then remaining due by the investment company to the school district as retiring depository. As a part of the agreement in question, the investment company agreed to pay interest to the bank on such balance until the investment company should pay over such balance to the bank. The credit so extended was not for any definite period, and in virtue of its terms the balance was payable whenever the bank might make demand for it. In the agreement it was stipulated that the arrangement should be concealed from the school district. The arrangement was carried out. The investment company furnished to the bank memoranda statements of the balances in the divers accounts in which the depository carried the school funds. Some payments against these balances were made by the investment company to the bank in the early months of 1916, and in February of that year the bank paid to the investment company an overdraft due the investment company in one of the school fund accounts. Interest upon the balances was computed from time to time and paid by the investment company to the bank or debited by the bank against the investment company. The school district made no draft in favor of the bank nor the investment company for any of the trust funds, and the transactions between the investment company and the bank were upon the initiative of those institutions and without conference with or regard to the school district. The facts that the bank had not received the school funds from the investment company, but had made the loan and interest arrangements mentioned, were not known to the school district until long afterwards. The active officials of the bank were active officials and practically owners of the investment company at the time of the transactions in question.

During September, 1916, H. F. Gunter, as cashier of the First State Bank of Teague, reported to the school district that the bank, as depository of the school funds, had then on hand approximately $32,000 of such funds. This statement was untrue. Such sum was sufficient to have included the funds covered by the arrangement between the bank and the investment company. No substantial change in the financial position of the investment company occurred between the date of the statements made by Gunter and the bankruptcy of the investment company, nor is it shown that the school district relied upon the Gunter representations or changed its position on account of them. Nor is it shown that the school district could have collected

from the investment company, if it had then endeavored to do so.

No express agreement was entered into between the investment company and the bank at or after the time the bank became depository to the effect that the bank would account to the school district for the balances owing by the investment company as retiring depository.

[1, 2] We are of opinion that the lost bond has no vital bearing upon the legal principles upon which this case must be decided. The act of the principal in that instrument in tendering to the school district an obligation carrying the forged signatures of important sureties thereon was a fraud upon the school district. The act of the district in accepting and approving the bond was not binding upon it, for it was induced by the fraud of the investment company and was based upon a mistake of fact. We are also of the opinion that the investment company was not legally authorized under its charter and the controlling provisions of the depository law to qualify as depository and the ruling of the department of education pursuant to the opinion of the Attorney General that the investment company was ineligible was correct. The judgment of the trial court discharging the sureties upon the lost bond was correct and should be affirmed.

[3] We are of opinion that no estoppel against the bank can be predicated upon the misrepresentations made by its cashier, Gunter, in September, 1916, to the effect that the bank then had on hand as depository funds belonging to the school district in amount sufficient to cover the missing funds. We hold that Gunter had implied authority to bind the bank, in virtue of his office and in virtue of the fact that it was part of his duty to keep track of the school district accounts and to make reports concerning and speak for the bank with reference to same to the school district from time to time, but some of the requisite elements of estoppel are absent from the case. The misrepresentations were not acted upon by the school district, its position was not changed, and it suffered no loss on account of, or prejudice from, such misrepresentations.

No liability against the principal and sureties under the bonds of date October 17, 1916, or September 21, 1917, is shown, and the judgment of the trial court discharging the makers of those bonds should be affirmed.

No liability is shown against the banks other than the First State Bank of Teague which were sued on the theory that one of the depositories kept with them at one time certain of the trust funds, and the judgment of the trial court in their favor should be affirmed.

We are of opinion, however, that the disposition made of the case as between the plaintiff, on the one hand, and the investment company, its trustee in bankruptcy, its sureties on the Ham bond, the First State Bank of Teague, and its sureties on the bond of December 30, 1915, is erroneous.

[4] Under the provisions of the Ham bond and the statutes which control the relationship between the school district and depositories of school funds, the investment company and the sureties upon the Ham bond became and remained liable to the school district for the safe-keeping and proper and actual paying over of the school funds until the investment company actually accounted for such funds to the school district or the new depository. Such responsibility could not be discharged through any arrangement, not equivalent to payment, made between the retiring depository and the new depository. So far as the responsibility to the school district of the investment company and its sureties is concerned, the case stands as if the secret arrangement which was made between the investment company and the bank about December 30, 1915, was never entered into nor performed, unless such secret arrangement is in law equivalent to payment by the investment company to the new depository. A depository of public funds cannot relieve itself of any portion of its duty safely to keep and properly to account for such funds, by making some unauthorized arrangement with some one other than the legal and responsible owners of the funds. If, however, the arrangement was equivalent to payment, the investment company and its bondsmen would be absolved unless they should be held by virtue of and through the very arrangement which was entered into. The arrangement, in other words, might be one which itself evidenced anew the obligations of the investment company and its sureties. In view of another trial, we deem it proper to say that in our opinion the facts proven and found at the former trial with reference to the arrangement made between the two depositories were equivalent to proof of the actual paying over of the school funds to the new depository. Whether the arrangement itself was one through which the school district could reach the investment company and its sureties we will not decide, for the question is not presented and has not been briefed or argued on this appeal.

[5] The effect of the arrangement between the two depositories upon the liability of the First State Bank and its sureties to the plaintiff school district is quite far-reaching. As between the investment company and the bank, the arrangement was equivalent to the actual payment by the investment company to the bank of the missing funds, and the immediate and contemporaneous loan of those funds by the bank to the investment company. The result is that the bank made itself and its sureties responsible to the

school district for the missing funds, even though no express contract was made between the bank and the investment company that it would so become responsible.

When the bank qualified as depository, it secured to itself the right to loan the school funds for its own profit, and it and its sureties undertook to account for the funds, regardless of the manner in which the bank might use the funds and regardless of the results which the bank might obtain for itself in its use of the funds. The bank acquired the right to loan the funds as it might choose to loan them and assumed all of the risks of losses under loans it might make out of such funds. It acquired the right to determine in what quarters and how it would use them and in what amounts and upon what terms it would use them. It had the right to loan the funds to the investment company upon such obligations of the investment company as were satisfactory to it, whether such obligations were written or verbal, and, if written, whether in conventional form or merely memoranda. When it entered into contract with the investment company whereby it affirmatively permitted the investment company to keep the funds which were then immediately payable upon terms when agreed upon as to interest, as to maturities and as to repayment, the transaction was in substance a loan.

Certain angles of the principles which control the liability of the investment company and its sureties on the Ham bond are discussed in the case of Hall County v. Thomssen, 63 Neb. 787, 89 N. W. 393. That case was an action upon the bond of William Thomssen as treasurer of Hall county to recover, among other shortages, a certain sum of $10,000. This sum had been deposited by Thomssen's predecessor in the bank of Commerce of Grand Island, which bank had become a lawful depository for county funds by giving statutory bond therefor to the county. When Thomssen's predecessor retired, he gave Thomssen checks upon the Bank of Commerce for the deposit in question. Thomssen, instead of withdrawing the funds in cash, presented the checks to the bank and had them certified, but did not otherwise disturb the funds. Within a few weeks thereafter the bank failed. The county sought to hold Thomssen and his bondsmen liable for the loss upon the theory that Thomssen's action in having the checks certified operated to withdraw the depository moneys and to create the direct relationship of debtor and creditor between himself and the depository bank, and that in consequence thereof the county had no recourse on the bank's depository bond, but did have recourse against Thomssen and his bondsmen. The court say:

"By the terms of the statute under which the Bank of Commerce became a depository, and by the terms of the bond which it was required to give, after receiving money of the county it would remain a depository of those moneys indefinitely, or until the money was duly paid out on the check of the treasurer, and the only way it could cease to be a depository would be by surrendering and paying over to the proper authorities all moneys in its hands which had been received by it as such depository. It is very clear that in this case no such paying over of the funds on deposit has ever been made by the bank."

Certain angles of the principles which control the liability of the bank and its sureties on the December 30, 1915, bond are discussed in the case of Trumpbour v. Trumpbour, 70 Hun, 571, 24 N. Y. Supp. 212, affirmed by New York Court of Appeals, 144 N. Y. 652, 39 N. E. 494. In that case it was shown that the New York Life Insurance & Trust Company, after undertaking safely to keep, invest, and pay interest upon certain trust funds which it was directed under an order of court to apply for and receive from the Farmers' National Bank of Hudson, for some reason failed, omitted, or neglected to demand or receive such funds from the other bank. Upon suit brought against the trust company for the funds, with their earnings, its answer was that it never received the funds, and hence should not account either for the funds or any earnings upon the same. The court say:

"Now, while it is true that it did not receive in fact a deposit of cash or a check or draft, it received what, under the circumstances, was the equivalent of a check or draft, and it is only by its own neglect or omission that it failed to realize upon it, as it could upon a check or draft where there was money on deposit to the credit of the person drawing such check or draft. The fund in question was in the possession, and under the control of, the court, and deposited for the time being in the Farmers' National Bank of Hudson. The court did not pay cash or draw checks or drafts, but makes and directs payments by its orders. In this case it directed the transfer of the money in its possession from, and its payment by, the Farmers' National Bank of Hudson to the New York Life Insurance & Trust Company by its order, which took the place of a check or draft of an individual or corporate drawer. That order was given to and left with the New York Life Insurance and Trust Company, such company in no wise refusing to accept the same, but agreeing to take the money therein mentioned, and to pay interest upon it as prescribed by its terms. This, I think, was a complete acceptance of the trust which it was authorized to receive and execute under its charter, and * * * it must be held to possess the money mentioned in the order, subject to an order of this court. If it does not in fact possess it, it is by reason of its own omission and neglect, and it is responsible for it and its increase to the court and those for whom it was to hold it in trust, just the same as if it had drawn it from the Hudson Bank."

We, do not think, even if it be shown that the school district knew of the credit arrangement between the bank and the investment company, that such knowledge would have any particular bearing upon the rights of the parties. The jury's findings with reference to such knowledge vel non are in apparent conflict, though we think the appearance of conflict largely disappears when the findings are closely analyzed. The findings, on the one hand, are in substance that the credit arrangement was concealed from the school district, and, on the other hand, that the school district knew that the investment company had not paid over the funds to the bank. Both findings might be true, but it is our view of the record that the facts proven and found established that the school district did not know of the credit arrangement between the bank and the investment company, and, if we regarded the matter of knowledge as of controlling importance, we would proceed upon the assumption that the school district did not possess such knowledge.

[6] It is urged on behalf of the bank that the credit it extended to the investment company ought not to be regarded as a loan because the amount involved was in excess of the sum the bank could lawfully loan to a single customer. Such fact, if true, does not affect the case. A bank may make an excess loan and may compel the borrower to repay it according to its terms. The penalty for the illegal act does not destroy the loan itself. The incidence of the penalty is elsewhere.

[7] It is urged that the bank owed the school district no duty actively to collect the school funds from the retiring depository, that it was the duty of the school district to draw warrant or make draft against the retiring depository in favor of the new depository, and thus or otherwise actually see that the funds were transferred, and that, until the school district itself brought about the actual transfer of the funds, the liability of the bank and the sureties upon its bond of December 30, 1915, did not begin. These views cannot be maintained and applied in this case, even though they might be abstractly correct. The relationship between the two depositories was very intimate. The executives of the bank owned and operated the investment company. The school funds normally were kept by the investment company in the bank. When the bank qualified as depository, it immediately assumed control of the school funds accounts, and, without waiting for any warrant, draft, or order from the school district, took over certain of the funds, made the credit arrangement with the investment company, which has been elsewhere described, settled the overdraft claimed by the investment company in one of the accounts, began earning and receiving interest on the delayed balances, agreed with the investment company to conceal from the school district the fact that the balances were being withheld by the investment company, and in every practicable way became the active depository of the school district and the apparent custodian of all of the school funds.

It is urged by certain of the sureties under the Ham bond that their general demurrer to plaintiff's pleadings should have been sustained in view of the alleged inconsistencies and uncertainties in the pleadings in setting forth the liabilities to plaintiff of the divers parties. The pleadings are not entirely satisfactory, the issues are not stated with that directness and steadiness which is desirable, but, in view of the disposition which we shall make of this appeal, the defects in the pleadings will doubtless be corrected before the retrial of the case. The briefs present numerous other questions, most of which become immaterial in view of the principles of law upon which this decision rests. So far as they are material, they will doubtless not arise on the retrial of the case, and we will not extend this opinion further to discuss questions which either are, or may become, abstract.

It is urged that the school district is estopped from proceeding against the First State Bank of Teague and its sureties, because the school district, after the collapse and bankruptcy of the investment company, proved up claim in bankruptcy against that company for the amount of its losses, which form the basis for this suit, and because it has received, and still retains, certain money paid it as a dividend upon such claim in bankruptcy. We cannot sustain this contention. The facts were not such as to present to the school district the duty of electing between inconsistent rights and remedies. In fact, the course taken by the school district which is complained of worked to the advantage of all of the other defendants, as well as to the advantage of the school district, for any dividend the school district may obtain through its claim against the bankrupt will reduce its claim against the other defendants.

Numerous issues were submitted to the jury. Its findings upon some of these issues are inconsistent and contradictory, indicating either a want of understanding of the issues and the evidence or some degree of passion and prejudice. In view of these facts, the errors we have already discussed, the imperfect state of the pleadings, and the obvious fact that the case was tried, in part at least, upon erroneous theories, call for the reversal in part of the judgment of the trial court and the remand of the cause in part for further proceedings, rather than that this court shall finally render judgment on this appeal.

Accordingly the judgment of the trial court with respect to the controversies in this cause between the plaintiff, Teague independent school district, on the one hand, and the defendants, the sureties on the Ham bond, the administratrix of J. R. Ham, deceased, the First State Bank of Teague, and the sureties upon its bond of December 30, 1915, will be reversed, and remanded to the trial court for further proceedings in accordance with this opinion, but as to all other parties its judgment will be affirmed; and it is so ordered.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes